The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. All right, be seated, please. All right, well, this morning we'll hear the United States v. Mr. Rafiekian, and we'll hear first from Mr. Michelson. Good morning, Your Honors. May it please the Court, Aiden Grano-Michelson for the United States. After the jury convicted the defendant on both charged counts, the district court granted a judgment of acquittal and conditional new trial order. It relied almost exclusively on its conclusion that the inferences that the jury adopted to reach that guilty verdict were weak. On appeal, this court reversed that determination and said that, in fact, the evidence easily established the offense elements, and remanded in case the district court had additional justifications for its weight of the evidence ruling. On remand, however, after another round of briefing and argument, the district court again granted a new trial on the basis of the weight of the evidence, predicated almost exclusively on the fact that it disagreed with the jury's inferences of guilt. The law across the federal circuits is uniform and unequivocal that a district court cannot grant a new trial under Rule 33 premised solely on its disagreement with the jury's inferences. By doing so, the district court committed legal error in failing to apply the correct standard and erred in its ultimate determination that the evidence weighed so heavily against the verdict that it would be unjust to enter judgment, which is the standard that this court adopted in Arrington. I'd like to initially start by addressing the standard of review. I think in this case, abusive discretion review, while typically deferential to the district court, comes with some added teeth because, in this case, the district court's determination flies directly in the face of the deference that is owed to jury verdicts after a criminal trial. In doing so, this court has noted in cases like Derek's Israel that abusive discretion review in such circumstances is flexible and depends on the procedural posture and the content of the case. Here, the rule of law articulated by federal circuits across the country, that district courts cannot grant new trials in these circumstances, is one that constrains the district court's discretion, and the district court did not even cite it in its decision below. In doing so, the district court's determination that the inferences of innocence were stronger than the inferences of guilt was not predicated on any conclusion that the government's evidence was unreliable, that it was patently incredible, that any of the government's witnesses were not credible as to the content of their testimony. The sole disagreement was whether the inferences drawn by the jury were stronger than those of innocence. The Supreme Court has noted that drawing inferences is the very essence of the function of a jury, and when a district court intrudes into that province, it is necessarily acting at the lowest scope of discretion that it has. This court has said in Arrington and Chavez that disagreement with a jury's verdict does not mandate a new trial, and I think that the law from the other circuits is equally clear that it does not permit a new trial in those circumstances as well. So the district court can't draw inferences at all? It can, Your Honor. It simply cannot. How much can it? It cannot simply base a new trial solely on the different inferences. So if we look at a case like Campbell, for example. What else was there in this case to convict or acquit? The whole case was circumstantial evidence and inferences. I disagree that the entire case was circumstantial evidence, Your Honor. We introduced direct evidence of Turkey's involvement, including a specific meeting with the Turkish foreign minister, at which he discussed his desire to have Gulen extradited to Turkey. I think that shows direct contact between the defendant and the Turkish government, in addition with the other inferences that, in fact, Aptekin was merely a cutout. But what's the direct evidence? I mean, the district court made a very, I think, impactful ruling early on that says that the statements from, I guess his name is Aptekin, they could be admitted but not for the truth of the matter asserted. So with that answer to Judge Frieda's question, what is the competent evidence that Turkey was directing or controlling his activities? What is that direct evidence, you say? The first piece of direct evidence, Your Honor, would be the defendant's own statement to Covington that when the project started, it was, in fact, for the Turkish government. That's what he said during the investigation as to whether the Flynn Intel Group was required to file a FARA filing in the first instance. Does that require the inference that Project Comfort is the same as Project Truth? I think it does, Your Honor, considering all of the evidence that we introduced, that absolutely nothing changed other than the name between August 10th and August 11th. On August 10th, it was called Project Truth, which the defendant admitted was for the Turkish government. And on August 11th, it was told to people other than those three on the initial e-mails that it was confidence and had to do with Turkish business. But the purpose remained exactly the same. The budget remained exactly the same. The 20% payments to Aptekin remained exactly the same. The playbook remained exactly the same. The anecdote about Ayatollah Khomeini stayed exactly the same and then appeared in the draft op-ed that Rafikian sent to Aptekin later in the process. But confidence is truth is still the product of an inferential process. Yes, Your Honor, but the jury is the one who is permitted to draw those inferences. The district court is not. The district court is not permitted to base a new trial solely on a disagreement with the jury's inferences. Which of this court's cases says that? This court has not said that rule, Your Honor. This is the rule from across the other federal circuits. This case has said that disagreement with the jury's verdicts does not mandate a new trial. It has never specifically said that a district court may not do so. But, again, that is the uniform position adopted by the federal circuits. If this court were to hold otherwise, it would be the first circuit to adopt such a rule where there has been no substantial impeachment of the government's evidence, where there have been no adverse credibility determinations of the government's witnesses. In essence, nothing went wrong in this trial to correct in a round two. The government would be introducing exactly the same evidence to prove exactly the same thing. There's no malfunction in the justice system that happened that needs correcting with a new trial. In contrast, cases like Campbell, where this court affirmed the grant of a new trial, the district court there made adverse credibility determinations about the government's witnesses, but said of even greater import was the fact that the government's presentation of evidence had focused almost entirely on an absent third party. And the district court had concerns that the jury's passions essentially had been inflamed into a conviction. Again, we don't have anything like that here. We don't have any case, in fact, where this court has affirmed the grant of a new trial based on weight of the evidence, solely on the fact of a disagreement with the jury's inferences. If I can cite to some of the other circuits that have applied this rule, particularly the Second Circuit in Archer and the Sixth Circuit in Burks, they have formulated the standard as that the evidence must heavily preponderate against the verdict and have explained that this occurs when the jury's verdict exceeds the bounds of reasonableness, is the language used by Burks, by Judge Sutton in the Sixth Circuit. And I think that is a useful distinction here because if the jury's inferences of guilt to sustain a verdict are reasonable, the district court's disagreement with that essentially usurps the jury's role as the fact finder and converts it into essentially an advisory verdict that the district court can accept or disregard entirely if it so chooses. The First Circuit has said in Rivera-Rangel that a district court does not sit as the 13th juror with a veto over the verdict. Instead, where it is predicated solely on the district court's disagreement on the basis of the evidence, it must be, quote, quite clear that the jury has reached a seriously erroneous result. I just don't think that can be said about the facts in this case. Judge Trenga did. Wouldn't you agree that even if the standard was the high water, the high bar set in the Second Circuit, that at least as far as the trial court was concerned, that standard was met here based on the substance and tone of the 51-page opinion that he wrote for us? Your Honor, I think the district court certainly thought that the evidence heavily preponderated against the verdict. I don't think that the district court took into account the fact that it could not predicate its decision solely on that disagreement, that it had to identify some defect, some error, some process, some reason to believe that the jury's verdict is, in fact, unreliable. If we look at other cases in which weight of the evidence, new trials have been upheld or reversed from other circuits, for example, the Fifth Circuit's recent en banc decision in Crittenden described the circumstances as including cases where the government's case depended on far-fetched inferences solely on the testimony of a cooperating co-defendant, where principal witnesses were obviously incredible, where there was meaningful exculpatory evidence or a significant risk that the verdict turned on improper factors. What's wrong with our state, the inheritance case? Why do we need to look at the Fifth Circuit's state? What's wrong with our state? Your Honor, I don't think this court has addressed the precise question about whether or not a district court's disagreement with inferences is an adequate basis standing on its own to be a ground for a new trial. I think it is implied that it is not. This court in Arrington and Chavez disregarded new trials based on weight of the evidence because it concluded that even disagreement with a jury's verdict did not require a new trial. And then the unpublished opinion in body said that even under Rule 3, district courts are required to give deference to the jury's verdict. Chavez points out that ultimately in criminal trials, juries are the ultimate fact finder and determiners of credibility, which I think heavily implies that the district court's role is circumscribed. So I don't think this is a departure from or a disagreement with the Arrington Standard about when evidence so heavily weighs against the verdict. I do think, however, that this legal limitation on district court's authority has not been explicitly addressed by this court in an opinion before. So the district judge is supposed to act with restraint, respect the jury verdict to the full extent that it is reasonably able. But in the instance where it finds it is unable and does what happened here, what deference does this court owe that conclusion on the part of the trial court? I think it depends on the ground the district court used. For example, a district court's determinations of witness credibility watched after seeing a trial are owed significant deference by this court who did not observe that kind of testimony. So where a district court's ruling is predicated on something like witness credibility, I think this court owes that determination more deference than it does based on, for example, the district court's interpretation of a written document, which this court can examine equally as well. This is the standard that this court applies in clear error, for example. The Supreme Court has said in cases like Anderson v. Bessemer City that the distinction between the deference owed to something like credibility determinations versus documentary evidence is different. And so here, where it's simply a determination of whether or not inferences drawn are weaker or stronger, again, the Supreme Court has said that that is the very function of a jury. And I think this court's first obligation should be to protect the jury verdict and not the district court's disagreement with that. In this case, where the district court has not identified any error or malfunction in the process, where there is no reason to believe the government's evidence is impeached or unreliable, the district court's disagreement with the jury verdict simply runs into who is the principal fact finder in a criminal trial, and that remains the jury. In cases like Cote, for example, then Judge Sotomayor wrote that extraordinary circumstances are required to intrude on a question of credibility for the jury, which the district court cannot wholly usurp. And I would submit that when the district court simply draws different inferences than the jury, it is in fact usurping the jury's role, and that's the sole basis for its determination. It is doing nothing more than replacing the jury's judgment with its own. So I'm thinking of this case in the context of countless criminal cases that we deal with along that line, but it seems to me, at least in these instances, we have allowed the district court to assess the weight of the evidence as a whole. After hearing all of the testimony and considering the evidence in the trial, not just witness credibility and things of that nature, but doesn't the district court have that responsibility, too, to assess it as a whole? Certainly, Your Honor, and I think that sort of cuts both ways, as the district court is required to consider the strength of the government's evidence in addition to assessing whether or not it thinks that the defense evidence provides stronger inferences of guilt. But even in that context, I think, again, that occurs based on whether a district court is finding that some malfunction went wrong. For example, when a jury is misinstructed on an element or poorly instructed on an element, a district court's assessment of whether or not the case is close is relevant to prejudicial error, to harmless error review, things like that. But when, again, the district court's sole basis for its decision is that it just disagreed with the jury's inferences, it has impermissibly intruded onto the core function that the criminal jury serves. See, I'm running to the end of my time. If the court has no questions, I'll reserve the remainder for rebuttal. Thank you, Mr. Mickelson. Okay, Mr. Teiss, is it? Teiss, Your Honor. Teiss. Thank you very much. May it please the court? The district court correctly held and certainly did not abuse its discretion in holding that the verdict was against the great weight of the evidence. The central question was whether the government could prove that Rafikian knowingly agreed to follow directions from Turkey. If you start out and say they correctly held, that's not what we do here. We might think it was incorrect. It's really that it abuses discretion. It sounds a little softer to me when you present it to us. Because I'm thinking correctness, I'm not sure I would go one way or the other on that. But when it comes to the standard of review here being whether there was an abuse of discretion by the district court. Fair enough, Your Honor. It's minor. It sounds minor. But I want to make sure that subtleness is not captured in trying to say this is incorrect or not correct. That's totally fair, Your Honor. And I think, in fact, you've captured, I think, the critical point on appeal here, which is the standard of review. It's abuse of discretion. We believe, as the district court did, that the evidence was against the great weight or the record was against the great, excuse me, the record evidence was against the verdict and was strongly so. But that's not the question here. The question is whether or not the district court abused its discretion in so holding. And I think this court's consistent case law in that regard says that although it is a demanding standard and it should be exercised rarely and sparingly, once that determination is made, this court reviews that determination under an abuse of discretion standard, not a more stringent standard of review. And that standard gives due regard to the district court's superior vantage point. And I think we've relied on three different cases in our briefs that involved situations where the court of appeals reversed, as here, a grant of a judgment of acquittal, but affirmed a conditional grant of a new trial. And the reason it did so is because of the different standard on appeal between those two determinations. In the former, all of the evidence has to be looked at in the light most favorable to the jury verdict. And the question becomes, could any rational jury find the defendant guilty? And this court's earlier opinion in this matter, I think more than half a dozen times, it reiterated, yes, a rational jury could look at this evidence when viewed most favorably, most in the government's favor. A rational jury could so agree. But on Rule 33, it's different. In this, again, once again, turning to this court's prior opinion in this case, this court said the district court's discretion is much broader in that context. And, in fact, it is the district court is able to operate within a range of discretion. So I mentioned those three cases. It's Campbell, Souter, and Wolf. The first is published. The second two are unpublished. But all three of them gave due deference, we believe, to the district court's determination as the person sitting in front of the jury, trial unfold, seeing the evidence come in, looking at juror reactions, understanding what inferences the jury was asked to make, and the way witnesses testified, that sort of thing. And I think there's a quote from the Wolf case that we like that I think really captures this. It said, a trial judge's superior vantage point is nowhere more certain than in assessing the overall dynamics of a trial, including such matters as the spillover effect of particular trial court errors, the possibility of juror confusion from whatever source, and the overall weight of the evidence. Now, the government in this case has come forward and urged this court to adopt a standard that I think it just admitted is not currently the standard in this court. And that is, even though that standard apparently is that the district court cannot grant a new trial if it disagrees profoundly, as it did here, with the inferences that the jury drew, that regardless of the sharpness of the disagreement or how. Certainly. It's a highly factual case, and it seems to me that the really operative facts occurred between July 26 and the end of September. And there's a lot of direct evidence there, and there has to be some inferred evidence. If we were to conclude that an inference of guilt is reasonable on that, and that it was well within the jury's purview to find an inference in favor of guilt, and the only objection that the district court has is that it thinks the inference of innocence is stronger, is it allowed to grant a new trial? If you're saying if you disagree, this court disagrees with the district court's determination of whether it was reasonable? No, no, no. I'm trying to be hypothetical. I'm saying it seems to me that I was saying two things. The foundation I was laying is that I think the operative evidence is in those two months, that two-month period, and the exchange of emails and the change from truth to confidence and all that. But my question really comes down to, I think this case turns on that, and the question is, if a court or we would conclude that a jury was reasonable in its inferences from that evidence of guilt, but the district court felt the inferences were stronger of innocence, does the district court act within its discretion to set aside the jury's verdict? I think he does, Your Honor, as long as he concludes within a reasonable range of discretion that the evidence weighs heavily against the guilty verdict, that the evidence weighs in favor. Well, I've done it the way. We're talking about a little more precise. We're talking about inferences of guilt from exchanges that took place over a two-month period. And we can trace that, talk about that. But the court didn't address that too much, that evidence in that critical period. It recited some of it, but then didn't discuss the inferences that could be taken reasonably from it or not. My question is really, if a jury can reasonably draw inference of guilt from that evidence and a court disagrees with the inference, seeing the same evidence, and says, I think it's a strong inference of guilt, is that sufficient to set aside or disregard the jury's verdict? And you fell back into the standard of against the great weight of evidence. But I'm not talking about the great weight. We're talking about a subtle plan, a discussion of events that took place which require some inferences. Right. Well, there's explicit evidence, but it requires some inferences. And what troubles me, I can just tell you, is where does the judge get to substitute his conclusion for that of the jury? At what level? And I know the standard against the great weight of evidence. But I don't think you can conclude that here because it's both sides, whether it's guilt or innocence. It's a question of weighing inferences. And the court uses the word weighing several times in inferences. Well, anyway, my question, I guess, probably focuses on the standard. Okay. Well, let me try a few different ways of answering your question, Your Honor, because I think there's a lot there. I think, first of all, I don't think there's any dispute that the judge can weigh inferences. I think my friend on the other side says that. They say in their brief they just disagree on whether or not you can grant a new trial on that basis. A couple points on that particular evidence that you're referring to, Your Honor. I think the reason why the district judge didn't go into a great deal of analysis with respect to that particular evidence is because it was all hearsay. It had come in only for the impact on the listener, Rafikian, not for the substance of it. And so I think the judge properly in his role was able to discount that to some extent. Well, I think one of the big points is from July 26 up until August 10, there was a plan adopted to discredit Gulen. And that plan was worked out directly with the Turkish government. And everybody seems to agree with that. There is an email on August 10 that says, let's have a discussion about confidentiality and budget. Very next day, presumably they had that conversation. That's an inference. Very next day, there's a whole new plan of confidence and a whole new program called confidence. And the plan is identical. And then they said, we're approved to go ahead on that plan with no discussion about any preliminary setup or so forth. But the inference that a jury could draw is that there was no change except a name in order to carry out the confidentiality requirement. That's the theory of the case. And then there is evidence thereafter to support the notion that the Turkish government was still behind it. What was said, for instance, in the New York meeting, what was at the bridge, you know, when they were dedicating the bridge in Turkey, the discussion, that type of thing. And the financial arrangement, the 20% payback to Inova. These things all confirm an inference that the jury found. The district court did not go into any of that and discount why the jury couldn't do that. That was the biggest. It's a fight over who is seeing the evidence and what light. Your Honor, I. That's the difficulty, I think, in the case. I understand. I disagree strongly with the fact the district court didn't go into that. I think in its meticulous 51-page opinion, it painstakingly. They cited some of them. They quoted it. But then it didn't address why the inference was, why the court's inference from that evidence was stronger than the jury's. Right. Well, I think with respect to. It didn't allow what the jury could reasonably conclude from that flow of evidence. I think what the district court found with respect to the truth to confidence transition, as it were, was informed by its view of the entire record, including having seen all the evidence come in. And I think with respect to that issue in particular, the evidence, the way it came in was that there was a coup attempt in a European Union country at the end of July. Shortly thereafter, Alptekin, the alleged cutout, had been trying to broker a deal. There was no actual project in existence, no extant project. He was trying to broker a deal. First, he was trying to broker it with the government of Turkey. When he was doing that, they were calling it Project Truth. At some point, they had a conversation. There was an internal discussion after that conversation that said, we're moving forward with the project, but we're going to do it through my company rather than through Turkey. That was the way the evidence came in. And so I think the district court's ultimate conclusion was it would be too speculative for the jury to take that piece of evidence, particularly in light of the evidence as a whole, and say that shows evidence of guilt. In fact, the great weight of the evidence, if you include the- Nobody seemed to disagree that Turkey was orchestrating Project Truth. Like I said, there was no project until end of August. This is all in the months lead up where Alptekin, who is an essential- You get up from July 26 to August 10. There was a whole program, and there was no good to go yet. Good to go came on August 11. And one day after, they said, we have to have a discussion about confidentiality and budget. The very next day, everything that had been discussed between July 26 and August 10 was continued on without change and without any preliminary. And to argue that that was a new project, to me, is a very hard call. And the jury concluded it's the same. Right. I don't think Judge Trenka disagreed that it was the same project. I think it was all along, Alptekin is trying to broker a project. Remember, he is the chairman of the Turkish American Business Council. He's a prominent Turkish businessman. He's obviously well-connected. He's trying to get a project going. They decided, they discussed the project in its embryonic stages on behalf of Turkey, and then eventually they discussed doing it on behalf of someone else. And that's the way the evidence came in. And this is the sort of, I think, subtle perspective that the district court judge has, who has seen all this evidence come in. He watched the trial unfold, and he saw this evidence. And I think that this is not a situation. He didn't find anybody's testimony incredible. He didn't. And, well, anyway, he didn't. It's not productive for me to try to argue one side or the other. What I'm really trying in my mind is to find the standard, because you start off with the notion that it's a jury trial. And in our tradition, we give the juries latitude to govern the fact-finding in the case. Absolutely right. We have a very limited role for courts to take jury verdicts away. Juries are the primary fact-finder that has been their historical role. But district judges have also played a very important role throughout history. Since the Judiciary Act of 1789, district judges have had the power to grant new trials in the interest of justice. And, in fact, such new trial grants were unreviewable, effectively unreviewable, until the mid-1980s when Congress, for the first time, allowed such determinations to be appealed. I recognize that. That is, what is that standard that we apply here? We recognize the district court can do it. And there are certainly instances when there's not going to be a disagreement. There's no abuse of discretion, which the district court did. But when you have a case in which the case has numerous inferences, and the question is really not are they reasonable inferences. They're inferences, okay? So there's nothing unreasonable in terms of inferences. But then you look at that as a whole. And when you get to the whole aspect of it, the question then becomes what can a district court do in that instance if you have a number of inferences in which a jury could reasonably come to those inferences, but then the ultimate conclusion is where you are having a problem in terms of the weight of the evidence. And that's the implications here reach far beyond this case. Right. It's not unique. I mean, it's not a typical criminal case that comes out, but it reaches into a number of cases that are built really upon inferences. And so the question then becomes what is the standard that we take? And, you know, there's a standard proposed by the other side. It's heavy. It's a sort of standard, inheritance standard, other standard. What is that standard that we articulate here for the Fourth Circuit in a case like this? Let me give you a couple of standards from your own case law. I think that the Souder case said essentially even if reasonable judges may view the record differently if considered in the first instance, we're satisfied that the district judge did a sufficient and careful consideration of the evidence here. And that's enough on abuse of discretion review. I want to make sure we're talking the same thing. We're not talking about our disagreement with the district court judge. We're dealing with the district court's disagreement with the jury. And then so how does he come with that? We're giving plenty of deference from this court. But what our examination has to reach in terms of what is the standard by which a district court can grant a new trial? When you have inferences that are throughout, that are there, none are unreasonable, but then the whole of it presents a question that, well, you know, there's a discretion to say a district court says, when you look at this holistically, it does not meet the greater weight of evidence there. Yes. Well, and, Your Honor, that's why this court I think ultimately has emphasized a highly deferential standard on appeal. And has said, for example, in the Wolf case, it's highly deferential, and we don't intrude much further than finding that whether the reasons given were manifestly without factual or legal basis in the record. Now, I submit to you that that's very different from the standard that the government is now proposing, which to our mind does not look much different than de novo review. They're basically asking you to re-ask the same question the district court asked in 51 pages, and I think answered, again, very painstakingly after considering the evidence and looking at the trial. Remember that not all inferences and not all circumstantial evidence is the same. For example, in this particular case, Your Honor, the government could have introduced evidence that, for example, money had been flowing into Anovo's coffers. That would have been strong circumstantial evidence, perhaps, that Turkey was really behind all this. But they didn't do that. Instead, the sorts of circumstantial evidence they point to, Your Honor, is things like there's no clear transition between truth and confidence. There was an email where they talked about doing it for Turkey, and then later on they decided to do it for Anovo, and there's no evidence about exactly how that occurred. To us, that is circumstantial evidence that is very speculative in addition, and clearly the district court, who had the best vantage point for looking at this evidence, knew the witnesses, knew the record better than anyone. You know, that's the sort of thing he gets to do. I want to make one point about the government's test, which is essentially the district judge can disagree on the credibility of witnesses, but it can't just disagree with inferences to be drawn. I would like to submit that that can't be the test because, first of all, it doesn't make sense under its own terms. The jury is also the primary fact finder who gets to judge witness credibility and to weigh the evidence. So it doesn't make sense to say, you know, if the district judge invades their province in terms of weighing witness credibility, that's okay, but it can't do it in terms of evaluating inferences. I think the way this test has always been formulated is that to say, as Your Honor said in Ravikian 1, this court said, it's a much broader discretion the district court has. It can do things like re-weigh the evidence, and critically, it does not have to view all the evidence in the light most favorable to the jury verdict. I still haven't heard you articulate a crisp one-sentence test after all of this discussion. I hear everything you're saying about what's wrong with the government's take. This isn't the Second Circuit. But what's ultimately rule? In one sentence, what's the rule that applies here? How does the appellate court measure the appropriateness of what a district judge did? I think it's akin, Your Honor, to clear error review. This court would have to find a clear and convincing conclusion that the district court erred in its factual finding. And as Judge Niemeyer mentioned, that's an intensely factual inquiry. Where does the great weight of the evidence lie? Does it point towards innocence? That is the sort of thing that ordinarily this court on appeal would defer to. And that is, again, a highly deferential standard. I think this court is quite used to abuse of discretion review. It understands the contours of that. And so if the district court is essentially, you know, acting within a reasonable range of discretion, if it's in the ballpark, even if this court might disagree in the first instance, if it was choosing to make that determination in the first instance, that should be enough. I want to make one more point with respect to the Second Circuit case, Your Honor, which the other side points to to say this court should adopt it. And I think if they did so, although both cases use very similar language, I don't think this court would have to explicitly disagree with the Second Circuit, since it also says you have to find that the verdict is against the great weight of the evidence and a manifest justice would result, which is exactly what the district court here found. But I also do think there's distinctions to be made with that case, one of which being that over and over again in that case the Second Circuit emphasizes how the district court had essentially been not convinced, or it remained unconvinced, or despite ample evidence, ample circumstantial evidence, it had doubts about whether the government had proven its case. That is acting as a 13th juror, Your Honor. In that case you are saying you're doing what a juror does, and you say I'm not convinced of guilt, you didn't prove it beyond a reasonable doubt. That is very different from what happened here, where the district court through 51 pages over and over again, over a dozen times noted why certain inferences were particularly weak compared to much stronger exculpatory inferences, discussed all of the things that it could not have reviewed the first time around during the Rafiki in one opinion, including the defense's evidence of things like the consistent positions that Flynn had taken with respect to Turkey and Gulen, even prior to this engagement. Rafikians undisputed multiple attempts to reach out and register under FARA with two different law firms, and other new evidence like that, that again was not part of the original decision. The registration, it depends on what the law firms were told. There was conditional advice given by the lawyers. I think the big question is the analysis, the district court's analysis of the evidence, and whether that overly intruded. I mean, as we have said that new trials are disfavored, and we defer very much to a jury, and the standard is a difficult one. But when you bear that standard with also the authorization of a court exercise discretion, it gets to be dicey as to what the standard is. I understand that concern, Your Honor. And again, obviously criminal juries play an integral role in the system. Ordinarily, their fact-finding is deferred to. But I think there also has to be the occasional case where a district judge says something went wrong here. The evidence, as I see it, was far in the direction of innocence, not guilt. And therefore, I'm not going to take away the criminal jury's role. I'm simply going to send the case before a different fact-finder. I am going to retry the case before a different one because something went wrong here. And that's not only the inferences that were drawn. There were other aspects of the case, too, that I think the district court, that kind of are woven throughout the district court's opinion, things like the hearsay evidence that came in and the extent of it, as well as the government's use of Defense Exhibit 66, which I think troubled the district court, and I think as the district court explicitly held, might have led to confusion. And those are the sorts of things, Your Honor, that I think the district court, again, is in the best position to really decide what effect it had on the jury. For Defense Exhibit 66, for example, it was a summary of classified information that only the district court and the government had seen. We had asked for a copy of the underlying evidence. The district court rejected that request. So this summary was given to us instead. And so the judge knew exactly what the underlying evidence was, and I think, again, that is sort of in his particular area of expertise in much the same way that judging witness credibility would be under the government's test. I think we have a red light, so. Thank you, Your Honor. Thanks for letting me go over, and we'd ask that you affirm. Mr. Michelson. Your Honors, I'd like to start by answering Judge Niemeyer's question. No, if the jury's inferences are reasonable, a district court's belief that innocent inferences are stronger is not a permissible basis to grant a new trial. And the reason is, I think, because we have to focus on the full Arrington test and not simply the fragment when the evidence weighs heavily against the verdict. Arrington says when the evidence weighs so heavily against the verdict that it would be unjust to enter judgment. We're talking about a standard of whether the verdict is unjust, and that's the same as in Rule 33. A new trial may be granted only in the interest of justice. I think if a jury's inferences of guilt are reasonable and supported by the record, it is not an unjust verdict. That is what they're there to do. They are the principal fact finder. I'd like to disagree slightly with my friend on the other side. I don't think this court has explicitly adopted the rule that disagreement cannot be the sole basis of a new trial, but it is certainly heavily implied it in Chavez. In Chavez, the court explicitly noted that Chavez's defenses had some evidentiary support, and yet even then, determining witness credibility and weighing conflicting evidence are the responsibility of the fact finder. We do not lightly disturb jury verdicts, and even disagreement with the jury's verdict would not mandate a new trial. I think that language has no force if the district court exercises its own unilateral ability to decide whether it's convinced by the evidence or not and kicks a jury verdict on that count. I also disagree with my friend that this is not in derogation of the criminal jury's role. It is an absolute derogation of this criminal jury's verdict, particularly where he said the district court found that something went wrong, but nothing went wrong here. This court already held on the first appeal that the evidentiary concerns that the district court was concerned about were not a problem, that the jury had been properly instructed, and so forth and so on. We're not dealing with a situation in which an error occurred in the process. We are dealing solely with the fact that the district court would have voted differently sitting as a 13th juror, and I don't think any federal circuit in the country permits that as a basis for a new trial. Addressing some... We're back to this whole issue about structural failings in the trial being a sole basis, the sole basis, for the trial court intervening and effectively overruling the jury. Is that the standard? In a case where almost all of the proof that the government presents is indirect or inferential evidence? Your Honor, I think if the verdict is reasonably supported by the evidence, if the jury's inferences are reasonable, it is not an unjust verdict, and that's the standard from Arrington, that's the standard of Rule 33. You cannot say that a jury's verdict is unjust when it is amply supported by the evidence. That's what this court said in Singh, that the district court had erred by disregarding the fact that the jury's verdict was amply supported by the evidence. I think that's essentially the same thing as saying that the jury's inferences were reasonable, that those were reasonable conclusions to draw. It depends on what the inferences are, doesn't it?  Everything that we would call inferences and say that's out of bounds for the district judge. It depends on what the inferences are and what the underlying proof is. Your Honor, I think that's captured by the patently incredible standard, for example. I think that's captured by witness credibility, which are other factors that other courts have looked to in this analysis. If the evidence is so patently incredible, that's a basis to say this verdict is unjust because patently incredible evidence was produced. That was what this court talked about in Chip, actually, back in the 1960s. There are mechanisms in place in the standard the government is advocating for to address situations like that. I'd like to address briefly some of the actual evidentiary arguments that my friend raised on the other side. First, the district court's determination that the statements were hearsay only goes to whether or not the statements can be used to prove the content of the statements. The fact that the statement happens are direct evidence of the discussions, of the conspiracy, of the agreements between Rafiki and Alptekin. I think it's important to remember that even past the conversion on August 10th and 11th to confidence, they continued to have discussions in which Alptekin was telling Rafiki about meetings with the Turkish minister, that he was getting final instructions, that he was meeting with the foreign minister's boss. Then later on, as late as November 3rd, when the final presentation happened, he was so disgusted with the presentation that Fig had put on for him, he threw the PowerPoint on the table and said, what am I going to tell Ankara? Throughout the entire body of evidence, the government constructed piece upon piece upon piece of evidence showing how Alptekin was acting as a cutout for a third party, and then introduced other evidence showing exactly how Turkey was that third party, was the one giving instructions to Alptekin and then to Rafiki to carry out. In this context, I think the jury's verdict and the determination of guilt is amply supported by both direct and circumstantial evidence, and the district court's disagreement with that simply is not sufficient. Okay, thank you. Our practice is to come down and shake hands with you. That's unique to the Fourth Circuit, and we have foregone that practice during the COVID protocols. I'm hoping that maybe even by March, you guys come back, maybe in March or May, and come visit us so we can shake your hands. But we'll have to thank you for your arguments from the bench and have a virtual shaking of hands. Thank you for your arguments, and we'll adjourn for the day.
judges: Paul V. Niemeyer, James Andrew Wynn, James K. Bredar